FILED BY _____ aim D.C.

Aug 24, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **22-20391-CR-MOORE/LOUIS**

18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(B)
18 U.S.C. § 1956(a)(2)(A)
18 U.S.C. § 1957
18 U.S.C. § 2
18 U.S.C. § 982(a)(1)

UNITED STATES OF AMERICA

vs.

RIXON RAFAEL MORENO OROPEZA,

Defendant.
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment, unless otherwise specified:

### RELEVANT STATUTORY BACKGROUND

1. The Foreign Corrupt Practices Act of 1977, as amended, Title 15, United States Code, Sections 78dd-1, *et seq.* (the "FCPA"), was enacted by Congress for the purpose of, among other things, making it unlawful to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value to a foreign government official for the purpose of assisting in obtaining or retaining business for, or directing business to, any person.

2. Venezuela's Anti-Corruption Law of April 7, 2003 (amended on November 19, 2014) prohibited public officials in Venezuela from, among other things, receiving or agreeing to receive, money, on their own behalf or through others, relating to any act taken in the course of

their official duties or responsibilities.

## RELEVANT INDIVIDUALS AND ENTITIES

3. Defendant **RIXON RAFAEL MORENO OROPEZA** ("**MORENO**") was a citizen of Venezuela. **MORENO** maintained personal and corporate accounts at banks in the United States and elsewhere.

4. Petróleos de Venezuela, S.A. ("PDVSA"), was Venezuela's state-owned and state-controlled oil company. PDVSA was owned and controlled by, and performed functions of, the Venezuelan government. PDVSA maintained a majority stake in, and controlled, the procurement process at certain PDVSA subsidiaries, including: Petropiar, S.A. ("Petropiar"), a joint venture between PDVSA and an American oil company. PDVSA and Petropiar were "instrumentalities" of the Venezuelan government and Petropiar's employees were "foreign officials," as those terms are used in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2)(A) and 78dd-3(f)(2)(A).

5. Venezuelan Official 1 was a senior official in the Venezuelan government. Venezuelan Official 1 was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2)(A) and 78dd-3(f)(2)(A).

6. Venezuelan Officials 2, 3, 4 and 5 were senior officials at Petropiar from in or around 2015 continuing to in or around 2017. Venezuelan Officials 2 through 5 were "foreign officials" as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2)(A) and 78dd-3(f)(2)(A).

7. **RIXON RAFAEL MORENO OROPEZA** owned and controlled various companies, including Moreno Oil Company 1 and Moreno Oil Company 2 (together, the "Moreno Companies"), that received business and funds, directly or indirectly, from Petropiar relating to the provision of supplies. **MORENO** opened bank accounts for the Moreno Companies in the

United States and elsewhere.

8. Co-Conspirator 1 was a Venezuelan citizen. Co-Conspirator 1 was a "person" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-3(f)(1).

9. Co-Conspirator 2 was a Venezuelan citizen. Co-Conspirator 2 was a "person" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-3(f)(1).

10. Co-Conspirator 3 was a Venezuelan citizen. Co-Conspirator 3 was a "person" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-3(f)(1).

11. Naman Wakil was a Syrian citizen and U.S. permanent resident. Wakil was a "domestic concern," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1)(A).

## COUNT 1
### (Conspiracy to Commit Money Laundering – 18 U.S.C. § 1956(h)

1. Paragraphs 1 through 11 of the General Allegations Section are re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around 2015, continuing until at least May 2019, in the Southern District of Florida, and elsewhere, the defendant,

**RIXON RAFAEL MORENO OROPEZA,**

did knowingly and voluntarily, that is, with the intent to further the object of the conspiracy, combine, conspire, confederate, and agree with Co-Conspirators 1 through 3, Naman Wakil, and others known and unknown to the Grand Jury, to commit an offense against the United States, that is:

    a. To knowingly transport, transmit and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United

3

        States, with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

    b.    To knowingly conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and that the financial transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

It is further alleged that the specified unlawful activity is the following: (a) a felony violation of the FCPA, Title 15, United States Code, Sections 78dd-2 and 78dd-3; and (b) an offense against a foreign nation, specifically Venezuela, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, as provided by Title 18, United States Code, Section 1956(c)(7)(B)(iv).

All in violation of Title 18, United States Code, Section 1956(h).

## PURPOSE OF THE CONSPIRACY

3.    It was the purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by bribing Venezuelan officials to obtain and retain contracts and other business advantages, including obtaining payment on multi-million dollar contracts with entities and instrumentalities controlled by the Venezuelan government, including Petropiar, and to launder bribes, proceeds, and other funds related to the corrupt scheme through accounts in the United States in order to promote the illegal bribery scheme and to conceal the nature and purpose of the proceeds of the illegal bribery scheme.

4

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **RIXON RAFAEL MORENO OROPEZA** and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following conduct in the Southern District of Florida and elsewhere:

4. In or around 2015, **RIXON RAFAEL MORENO OROPEZA** agreed with Co-Conspirator 1 to pay a bribe to Venezuelan Official 1 to install Venezuelan Official 2 as a high-ranking procurement official at Petropiar. **RIXON RAFAEL MORENO OROPEZA** subsequently caused wire transfers totaling approximately one million dollars to be made from accounts controlled by **RIXON RAFAEL MORENO OROPEZA** for the benefit of Venezuelan Official 1.

5. From in or around June 2015 continuing through in or around December 2016, **RIXON RAFAEL MORENO OROPEZA** paid bribes to Venezuelan Official 2 in exchange for improper business advantages, including internal Petropiar procurement material and other assistance relating to the contracts and payment priority on contracts from Petropiar.

6. In or around August 2015, as a result of the bribes made by **RIXON RAFAEL MORENO OROPEZA** to Petropiar officials, **RIXON RAFAEL MORENO OROPEZA** caused Petropiar to approve an approximately $2.7 million contract, inflated by more than one hundred times the actual cost for Moreno Company 1, to supply breathing devices to Petropiar.

7. In or around late 2015, as a result of bribes made by **RIXON RAFAEL MORENO OROPEZA** and Naman Wakil to Petropiar officials, **RIXON RAFAEL MORENO OROPEZA** and Naman Wakil caused Petropiar to approve an approximately $11.2 million contract for the supply of pipes to Petropiar. Naman Wakil acquired the pipes supplied to Petropiar from China for approximately $1.3 million, leaving an inflated amount of approximately nine times the amount

of the pipes. To conceal and disguise the beneficiaries of this contract, **RIXON RAFAEL MORENO OROPEZA**, Naman Wakil, and their co-conspirators caused the proceeds of this contract, initially received in South Florida, to be transferred to Panama, and subsequently returned to South Florida.

8. From in or around June 2015 continuing through in or around April 2017, **RIXON RAFAEL MORENO OROPEZA**, in relation to contracts he received from Petropiar, sent millions of dollars of bribe payments for the benefit of Petropiar officials from accounts he controlled in South Florida. **RIXON RAFAEL MORENO OROPEZA** sent many of these bribe payments by wire transfer to the account of Co-Conspirator 3 in South Florida and instructed Co-Conspirator 3 to transfer specific bribe amounts for the benefit of Venezuelan Officials 2, 3, 4, and 5. At **RIXON RAFAEL MORENO OROPEZA's** direction, Co-Conspirator 3 also sent false invoices to **RIXON RAFAEL MORENO OROPEZA** to conceal and disguise the true nature of the financial transactions and bribe payments.

9. From in or around 2015 to in or around 2019, **RIXON RAFAEL MORENO OROPEZA** received over $30 million in payments from Petropiar to the Moreno Companies' accounts in South Florida. **RIXON RAFAEL MORENO OROPEZA** used the proceeds for his own personal benefit, including to purchase real estate, a private jet, and luxury vehicles in South Florida.

**COUNTS 2-3**
**Money Laundering**
**(18 U.S.C. § 1956(a)(1)(B)(i))**

1. Paragraphs 1 through 11 of the General Allegations Section and paragraphs 1 through 6 of the Manner and Means Section of Count 1 are realleged and incorporated by reference as though fully set forth herein.

2. On or about the dates set forth in each Count below, in the Southern District of Florida and elsewhere, the defendant,

**RIXON RAFAEL MORENO OROPEZA,**

conducted, and aided, abetted, and caused to be conducted, and attempted to conduct, the following financial transactions involving the proceeds of specified unlawful activity, knowing that the property involved represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and control of the proceeds of the specified unlawful activity, as set forth below:

| Count | Approximate Date | Description of Transaction |
|---|---|---|
| 2 | December 28, 2016 | Wire transfer in the amount of approximately $116,666 from a bank account of **RIXON RAFAEL MORENO OROPEZA** in the Southern District of Florida to a bank account controlled by Co-Conspirator 3 in the Southern District of Florida |
| 3 | April 12, 2017 | Wire transfer in the amount of approximately $127,118 from a bank account of **RIXON RAFAEL MORENO OROPEZA** to a bank account controlled by Co-Conspirator 3 in the Southern District of Florida |

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2,

It is further alleged that the specified unlawful activity is a violation of the FCPA and an offense against a foreign nation, specifically Venezuela, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, in violation of Title 18, United States Code, Section 1956(c)(7)(B)(iv),

## COUNT 4
### International Laundering of Monetary Instruments
### (18 U.S.C. § 1956(a)(2)(A))

1. Paragraphs 1 through 11 of the General Allegations Section and paragraphs 1 through 6 of the Manner and Means Section of Count 1 are re-alleged and incorporated by reference as though fully set forth herein.

2. On or about February 16, 2016, in the Southern District of Florida and elsewhere, the defendant,

**RIXON RAFAEL MORENO OROPEZA,**

knowingly transported, transmitted, and transferred, and aided and abetted, and caused the transport, transmission, and transfer of, a monetary instrument and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States, that is, the transfer of approximately $2,818,279 from a bank account in Panama to a bank account in Miami, Florida, with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

It is further alleged that the specified unlawful activity is a violation of the FCPA and an offense against a foreign nation, specifically Venezuela, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, in violation of Title 18, United States Code, Sections 1956(c)(7)(B)(iv) and 2,

## COUNTS 5-6
### Engaging in Transactions in Criminally Derived Property
### (18 U.S.C. § 1957)

1.  Paragraphs 1 through 11 of the General Allegations Section and paragraphs 1 through 6 of the Manner and Means Section of Count 1 are re-alleged and incorporated by reference as though fully set forth herein.

2.  On or about the dates set forth in each Count below, in the Southern District of Florida and elsewhere, the defendant,

**RIXON RAFAEL MORENO OROPEZA,**

did knowingly engage in, and aid, abet, and cause others to engage in, and attempt to engage in, a monetary transaction affecting interstate commerce, by, though, and to a financial institution, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, as set forth below:

| Count | Approximate Date | Description of Transaction |
|---|---|---|
| 5 | January 25, 2017 | Wire transfer in the amount of approximately $100,000 from a bank account of **RIXON RAFAEL MORENO OROPEZA** in the Southern District of Florida to the account of a South Florida car dealership for the purchase of a luxury vehicle |
| 6 | February 20, 2018 | Wire transfer in the amount of approximately $419,450 from a bank account of **RIXON RAFEL MORENO OROPEZA** in the Southern District of Florida to a title company bank account in the Southern District of Florida for the purchase of an apartment in Miami |

In violation of Title 18, United States Code, Section 1957.

It is further alleged that the specified unlawful activity is a violation of the FCPA and an offense against a foreign nation, specifically Venezuela, involving bribery of a public official, and

9

the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, in violation of Title 18, United States Code, Sections 1956(c)(7)(B)(iv) and 2.

## FORFEITURE ALLEGATIONS

1. The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **RIXON RAFAEL MORENO OROPEZA,** has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Sections 1956 or 1957, as alleged this Indictment, the defendant shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

3. The property subject to forfeiture as a result of the alleged offenses includes, but is not limited to, the following: Approximately $424,607.52 seized from account number 251747057 at Regions Bank on or about March 14, 2022.

4. The property subject to forfeiture as a result of the alleged offenses includes, but is not limited to, a sum of approximately $32 million, which represents the total amount of funds involved in or derived from the alleged offenses and may be sought as a forfeiture money judgment.

All pursuant to Title 18, United States Code, Section 982(a)(1), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, 982(b)(1).

A TRUE BILL

███████████████

FOREPERSON

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

Michael N. Berger
Assistant United States Attorney

LORINDA I. LARYEA
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION

Alexander Kramer
Trial Attorney

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

RIXON RAFAEL MORENO OROPEZA,

_____/

CASE NO.: _____

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information:**

New Defendant(s) (Yes or No) **No**
Number of New Defendants ____
Total number of New Counts ____

**Court Division** (select one)
- ☒ Miami    ☐ Key West    ☐ FTP
- ☐ FTL      ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) **Yes**
   List language and/or dialect: **Spanish**

4. This case will take **10** days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I   ☐ 0 to 5 days
   - II  ☒ 6 to 10 days
   - III ☐ 11 to 20 days
   - IV  ☐ 21 to 60 days
   - V   ☐ 61 days and over

   (Check only one)
   - ☐ Petty
   - ☐ Minor
   - ☐ Misdemeanor
   - ☐ Felony

6. Has this case been previously filed in this District Court? (Yes or No) **No**
   If yes, Judge _____ Case No. _____

7. Has a complaint been filed in this matter? (Yes or No) **No**
   If yes, Magistrate Case No. _____

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) **No**
   If yes, Judge _____ Case No. _____

9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) **No**
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) **No**
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) **No**

By: _____
Michael N. Berger
Assistant United States Attorney
Court ID No.     A5501557

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** RIXON RAFAEL MORENO OROPEZA

**Case No:** _____

Count #: 1

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)
* Max. Term of Imprisonment: 20 years
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 3 years
* Max. Fine: $500,000

Count #: 2-3

Money Laundering

Title 18, United States Code, Section 1956(a)(1)(B)(i)
* Max. Term of Imprisonment: 20 years
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 3 years
* Max. Fine: $500,000

Count #: 4

International Laundering of Monetary Instruments

Title 18, United States Code, Section 1956(a)(2)(A)
* Max. Term of Imprisonment: 20 years
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 3 years
* Max. Fine: $500,000

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

Counts #: 5-6

Engaging in Transactions in Criminally Derived Property

Title 18, United States Code, Section 1957
* **Max. Term of Imprisonment: 10 years**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 years**
* **Max. Fine: $250,000 or twice the amount of the criminally derived property involved in the transaction**

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.